**NOT FOR PUBLICATION**

```
           UNITED STATES DISTRICT COURT
              DISTRICT OF NEW JERSEY
```

_____
WAYNE FISHER,                  :
                               :  Civil Action No. 10-6369 (FSH)
            Petitioner,        :
                               :
      v.                       :       **O P I N I O N**
                               :
OSCAR AVILES, et al.,          :
                               :
            Respondents.       :
_____:

**APPEARANCES:**

    WAYNE FISHER, Petitioner, <u>Pro</u> <u>Se</u>
    A# 078 420 244
    235708
    E-4N
    Hudson County Correctional Center
    35 Hackensack Avenue
    Kearny, New Jersey 07032

**HOCHBERG, District Judge**

Petitioner, Wayne Fisher, is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Hudson County Correctional Center in Kearny, New Jersey, pending his removal from the United States.[1] On or about December 13, 2010, Fisher filed this Petition for

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his mandatory detention pending removal proceedings as unconstitutional. The petition seeks issuance of an Order to Show Cause, as well as appointment of counsel.

Fisher brings this action against Oscar Aviles, Facility Director at Hudson County Correctional Center; Christopher Shanaham, Acting Field Office Director for Deportation and Removal; John T. Morton, Assistant Secretary of the ICE; Janet Napolitano, Secretary of the DHS and Eric Holder, United States Attorney General, as the named party respondents (hereinafter referred to as "the Government") in this action. (See Petition at Caption, ¶¶ 10-14). For the reasons stated below, this petition for habeas relief is subject to summary dismissal because mandatory detention pending completion of removal proceedings has been held constitutionally permissible. See Demore v. Kim, 538 U.S. 510 (2003).

## I.   BACKGROUND

Fisher is a native and citizen of Jamaica, who came to United States in 2002. (Petition, ¶ 15). He admits that he is being detained pending conclusion of his removal proceedings pursuant to 8 U.S.C. § 1226(c). Fisher states that he is not contesting his removal, that he has been detained under ICE custody since June 3, 2010, and that he has not had an interim custody review hearing. He also alleges, without any factual

support, that the Consulate General of Jamaica will not issue travel documents for Fisher in the reasonable and foreseeable future.  (Petition, ¶¶ 1, 2, 9, and 15).

## II. DISCUSSION

A. Standard of Review

Fisher seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[2]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Under 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

---

[2] Fisher also asserts jurisdiction under the All Writs Act, 28 U.S.C. § 1651.

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Jurisdiction to Grant Habeas Relief

As stated earlier, Fisher brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has subject matter jurisdiction over this petition because Fisher is being detained within its jurisdiction at the time he filed his petition, and because Fisher asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process under the Fifth Amendment.

C.  Relevant Statutory and Case Law Authority

Fisher admits that he is being held pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the INA. This statute provides for the mandatory detention, without bond while removal proceedings are pending, of those aliens who committed certain enumerated categories of criminal and other offenses.

Specifically, Title 8 of the United States Code, Section 1226 states:

> § 1226. Apprehension and detention of aliens
> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be ... detained pending a decision on whether the alien is to be removed from the

4

> United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
> (1) may continue to detain the arrested alien;
> [or] may release the alien on-
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole....
> (c) Detention of criminal aliens.
> (1) Custody. The Attorney General shall take into custody any alien who ...
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

In other words, detention under § 1226(a) is discretionary and requires individualized bond hearings, while detention under § 1226(c) is mandatory and does not provide for any bond hearing. Both provisions apply to "pre-removal-order detainees," that is, to those aliens who are in the midst of their removal proceedings and thus whose removal orders have not become "final."

Section 1226(a) provides the Attorney General (or the DHS)[3] with the discretionary authority to release an alien on bond or conditional parole pending completion of removal proceedings. Under § 1226(a), an alien may be released where he can show, to the satisfaction of the DHS/ICE, that he is not a flight risk or a danger to the community. 8 C.F.R. § 236.1(c)(8). A similar standard applies before the Immigration Judges and BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

Under the mandatory detention statute, however, immigration courts are without jurisdiction to redetermine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond. 8 C.F.R. § 1003.19(h)(2)(i)(D)(2008). An alien may request a Joseph hearing before an immigration judge to determine if the alien is properly

---

[3] Pursuant to the Homeland Security Act of 2002, all immigration functions vested in the Attorney general, with a few exceptions, were transferred to the Secretary of the DHS. The Attorney General has delegated his discretionary custody redetermination authority to the Immigration Judges and the BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

included in the mandatory custody provision, pursuant to <u>Matter of Jospeh</u>, 22 I.& N. Dec. 299 (BIA 1999) and 8 C.F.R. § 1003.19(h)(2)(ii).

Once the removal order becomes "final," the alien's "removal period" begins to run.  Specifically, the "removal period" starts on the latest of the following (1) the date when the order of removal issued by an Immigration Judge ("IJ") becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement.  <u>See</u> 8 U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien.  Detention during this 90-day removal period is mandatory.  Section 1231(a)(1)(c), however, provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. §

1231(a)(6).  However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention."  Id. at 700-01.  However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Moreover, no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c).  Consequently, an alien who, during his presumptive six-month Zadvydas-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months.  See, e.g., Wang v. Carbone, No. 05-2386

(JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and Sango-Dema v. District Director, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in Zadvydas, causing a quasi-tolling.

Thus, "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir.2003).

D.  The Issue of Mandatory Detention

Fisher asserts that his mandatory detention under § 1226(c) violates due process because it is an unreasonably prolonged detention. He seeks his release under supervision, or in the alternative, a bond hearing to be conducted on this issue of his release under supervision while his removal proceedings are ongoing.

The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. See 8

U.S.C. § 1226(c)(2).[4]  Further, an alien detained under § 1226(c) is not afforded a bond hearing before an IJ, whereas a noncriminal alien, who is detained under § 1226(a), is given such a hearing.  See 8 U.S.C. § 1226(a), (c).  Consequently, Fisher, as an alien detained under § 1226(c), does not have an opportunity to show that he does not pose a danger to the community or a flight risk to be released on bond.  See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution.  In Demore, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him.  The Supreme Court held that detention of lawful

---

[4] Section 1226(c)(2) reads:  The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation proceedings.  Id. at 523-24.  In doing so, the Court noted that detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

However, the Supreme Court's holding in Demore, as noted in Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "narrow[ ] ... grounded in repeated reference" to the brevity of removal proceedings.  Id. at 664.  In Demore, the Supreme Court recognized that § 1226(c) was intended only to "govern [ ] detention of deportable criminal aliens pending their removal proceedings," which the Court stressed typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Demore, 538 U.S. at 527-28 (emphasis in original).

D. Petitioner Is Not Entitled to Release from Detention

Fisher challenges his mandatory detention under 8 U.S.C. § 1226(c) substantially on the ground that it violates his rights to substantive and procedural due process.  The petition plainly

11

states on its face that Fisher's removal proceedings are not yet final.

This Court concludes that the United States Supreme Court's holding in <u>Demore v. Kim</u>, 538 U.S. 510 (2003) forecloses Fisher's constitutional challenge to his continued mandatory detention.

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226 (INA § 236). Section 1226(a) gives the Attorney General discretion to arrest and detain an alien pending removal proceedings and to release the alien on bond. Section 1226(b) gives the Attorney General discretion to revoke a bond or parole under § 1226(a). By contrast, however, § 1226(c) requires that aliens with certain enumerated criminal convictions be detained pending removal proceedings. In particular, § 1226(c) provides for the detention of criminal aliens who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]." 8 U.S.C. § 1226(c)(1)(B).

Here, Fisher admits in his petition that his detention is governed by 8 U.S.C. § 1226(c)(1)(B), as a deportable alien convicted of an aggravated felony whose removal proceedings are not yet final.[5] As stated in the previous section of this

---

[5] Under 8 U.S.C. § 1231, the government may detain an alien subject to a final order of removal. Section 1231(a)(6) provides, in pertinent part:

An alien ordered removed [1] who is inadmissible ...

Opinion, the Supreme Court has held that the detention of an alien pursuant to the no-bail provision under § 1226(c) does not violate due process under the Fifth Amendment.  DeMore, supra. The Supreme Court reaffirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id., 538 U.S. at 526.  The Court concluded that the mandatory detention provision under § 1226(c) furthered the government's legitimate purpose of preventing aliens from fleeing before the removal proceedings are completed,[6] and that such detention would be limited to a finite period of time generally needed for completion of removal proceedings.  Id. at 529-531.

The Supreme Court, however, did not set a temporal time limit on the detention of an alien pending removal proceedings, acknowledging that detention under § 1226(c) was typically short

---

> [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ... ."

[6]  The Court also acknowledged that "in adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully."  Kim, 538 U.S. at 528.

in duration.  Id. at 527-28 (distinguishing its decision in Zadvydas with respect to detention under § 1231, by emphasizing that detention under § 1226(c) had an obvious termination point and that such confinement was generally brief).  See also Contant v. Holder, 352 Fed. Appx. 692, 694 (3d Cir. 2009)(where a pre-removal-order petitioner is being detained pending a decision on whether he is to be removed from the United States, there is no indication that petitioner cannot be deported to his country of origin following an unfavorable removability decision).

    Moreover, while there may be legitimate concerns that due process necessitates an individualized custody evaluation for aliens who have been in detention pending lengthy removal proceedings, the Government is not obligated under the Due Process Clause "to employ the least burdensome means to accomplish its goal" in "dealing with deportable aliens." Demore, 538 U.S. at 528.

    In this case, there is no indication that Fisher has been detained for an inordinately lengthy period of time, or that his removal proceedings are substantially delayed.  Fisher states only that he has been in detention for six months at the time he filed his petition.  He does not allege any inordinate delays by the DHS/ICE, although he does allege that he is not challenging his removal.

14

Accordingly, this Court finds that Fisher has failed to state any violation of federal statutory or constitutional law respecting his mandatory detention pending removal proceedings. Therefore, his petition seeking release from detention must be dismissed at this time.[7]

That leaves only the issue of bond hearings, which are inapplicable to aliens like Fisher, detained under Section 1226(c). The Supreme Court observed in <u>Demore v. Kim</u> that the fact of the prolonged detention does not entitle an alien to individualized bond hearings if the alien "himself had requested a continuance of his removal hearing." <u>Id</u>. at 530. Consequently, Fisher's request for a bond hearing as provided under § 1226(a) is without merit and will be denied at this time.

E. <u>Case Law Relied Upon by Petitioner</u>

The Court's discussion would not be complete if the Court overlooked the immigration cases and additional claims invoked by Fisher. First, Fisher's reliance on <u>Zadvydas</u> for his release under supervision is misplaced because that case involved individuals who had final orders of removal but whose removal could not be effectuated. Here, as stated above, Fisher is a pre-removal order alien subject to the mandatory detention

---

[7] The petition will be dismissed without prejudice to Fisher renewing his application to the extent that he can show inordinate delays by the Government that has perpetuated his detention, which is not alleged or evident from the instant petition.

15

provision under § 1226(c).  Thus, there is no indication that petitioner cannot be deported to his country of origin following entry of a final removal order.  See Demore v. Kim, 538 U.S. at 528; Contant, 352 Fed. Appx. at 694.  Moreover, Fisher has failed to demonstrate that his detention has been unreasonably prolonged by the Government to justify a bond hearing.

Fisher also cites the following case law, which held that prolonged mandatory detention under § 1226(c) raises serious constitutional problems: Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005); Ly v. Hansen, 351 F.3d 263, 271-72 (6th Cir. 2003).  However, Fisher declines to refer to the Third Circuit's ruling in Contant, which held that an alien's lengthy pre-removal order detention was not indefinite, and thus, not in violation of due process.  Indeed, Fisher does not face permanent detention like the aliens in Zadvydas and Ly.  Much to the contrary, Fisher does not allege that he cannot obtain his release to the Jamaica at any time, and therefore, he does not face the prospect of indefinite detention.

Moreover, in all of the cases cited by Fisher, the petitioners had been detained for a period of time significantly longer than Fisher in this instance.  See Tijani, 430 F.3d 1241 (two years and eight months); Ly, 351 F.3d 263 (about 17 months); Scarlett v. U.S. Department of Homeland Sec., 632 F. Supp.2d 223 (W.D.N.Y. 2009)(five years); Fuller v. Gonzales, 2005 WL 818614

(D.Conn. Apr. 8, 2005)(two years); Hyppolite v. Enzer, 2007 WL 1794096 (D.Conn. June 19, 2007)(15 months); Madrane v. Hogan, 520 F. Supp.2d 654 (M.D.Pa. 2007)(two years, and Government challenging a waiver of admissibility which prolonged issuance of final order of removal); Alli v. Decker, 644 F. Supp.2d 535 (M.D.Pa. 2009)(two petitioners detained for 9 months and 20 months); Bourguignon v. MacDonald, 2009 WL 3600379 (D.Mass. Oct. 30, 2009)(27 months); Uritsky v. Ridge, 286 F. Supp.2d 842 (E.D. Mich. 2003)(11 months). None of these cases are binding on this Court, and this Court, respectfully, does not find them persuasive in any event, as the circumstances of their prolonged detention are markedly different from the instant case.

In sum, this Court does not find any basis in the instant case to depart from the express requirement of mandatory detention under § 1226(c), as upheld in Demore v. Kim, and by the Third Circuit in Contant v. Holder. Therefore, Fisher's application for habeas relief from mandatory detention and his request for a bond hearing are dismissed without prejudice to his bringing a new action should he be able to demonstrate circumstances of indefinite detention and inordinate delays perpetuated by the Government. Because this petition is being dismissed, Fisher's application for an Order to Show Cause or preliminary injunctive relief will be denied as moot at this time.

17

III. <u>CONCLUSION</u>

Based upon the foregoing, the habeas petition seeking petitioner's release from detention pursuant to a bond hearing pending a final order of removal is dismissed without prejudice. Further, the application for an Order to Show Cause is denied as moot. An appropriate Order accompanies this Opinion.

<pre>
                                    s/ Faith S. Hochberg
                                    FAITH S. HOCHBERG
                                    United States District Judge
</pre>

Dated: February 23, 2011